IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JANET WALTERS and

    Plaintiff,

v.
                                      Case No. 6:01-CV-1390-ORL-19JGG

CENTRAL FLORIDA INVESTMENTS, INC.,
WESTGATE AT THE CANYONS PARK CITY,
WESTGATE RESORTS, INC., WESTGATE
RESORTS, LTD., WESTGATE AT THE CANYONS
INSURANCE AGENCY,

    Defendants.
_____/

## DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE

Defendants, Central Florida Investments, Inc., Westgate at the Canyons Park City, Westgate Resorts, Inc., Westgate Resorts, Ltd. and Westgate at the Canyons Insurance Agency, (collectively "Defendants" or "Westgate"), file this Memorandum in Opposition to Plaintiff's, Janet Walter ("Plaintiff") First Motion in Limine.

## FACTS

1.    Plaintiff, Janet Walters ("Plaintiff"), filed this action initially seeking damages by alleging sexual harassment resulting in a sexually hostile work environment and retaliation in violation of Title VII, 42 U.S.C. 2000e *et seq*. Currently, the only claim pending before this Court is Plaintiff's hostile work environment claim. Plaintiff alleges that Joe McGriff, the Director of Sales for Westgate at the Canyons, Park City, Utah ("the Canyons") sexually harassed her.

2.    Marc Walters, Plaintiff's husband, initially was a party to this action. He alleged that Defendants retaliated against him after his wife complained of Mr. McGriff's sexual harassment.

Case No. 6:01-CV-1390-ORL-19JGG
Defendants' Memorandum in Opposition to
Plaintiff's Motion in Limine

However, on August 5, 2002, Mr. Walters voluntarily dismissed his claims against the Defendants with prejudice. Plaintiff has listed Mr. Walters as a witness for the limited purpose of establishing proof of damages.

3. Plaintiff also identified Mary Lawver as a witness. Mary Lawver, like Plaintiff, was an independent contractor engaged by CFI Sales & Marketing, Ltd., to sell the timeshare property at Westgate at the Canyons, in Park City, Utah.

4. Mary Lawver filed a separate Title VII action against the Defendants alleging *quid pro quo* sexual harassment, hostile work environment, sexual harassment and retaliation. See, *Mary Lawver v. CFI Sales & Marketing, Ltd.; CFI Sales and Marketing, Inc.; Central Florida Investments, Inc.; Westgate at the Canyons, Park City; Westgate Resorts, Inc.; Westgate Resorts, Ltd.; Westgate at the Canyon Insurance Agency*, United States District Court, Middle District of Florida, Case No. 6:02-CV-465-ORL-28DAB, or "the Lawver action." Lawver, like Plaintiff, was also represented by Frederick Morello. Lawver's case was settled prior to trial and she is subject to a confidentiality agreement.

### Prior Title VII Actions by Walters and Lawver

5. On October 2, 1997, Plaintiff and her husband filed a Title VII action against their former employers alleging sexual harassment and retaliation, among other claims. See Exhibit A, *Janet Walters and Marc Walters v. Promotional Travel, Orlando Resort Development, Avenue Plaza LLC, Kosmas Group, 811 Development Corp., Resort Management Services, Inc., Ocean Realty Group, Ocean Development Group, Inc., Ocean Development Group of Maryland, Inc. and Kosmas Group, Inc.* United States District Court, Middle District of Florida, Case No.: 97-1204-CIV-ORL-19C ("the Ocean Development action.")

Case No. 6:01-CV-1390-ORL-19JGG
Defendants' Memorandum in Opposition to
Plaintiff's Motion in Limine

6.  On April 29, 1998, Lawver filed a Title VII action against her former employer, Fairfield Communities.

7.  On January 11, 2006, Plaintiff filed her Motion in Limine ("Plaintiff's Motion") seeking to exclude: (1) testimony about Plaintiff or her husband's prior Title VII lawsuit against their former employer; (2) testimony that Marc Walters was a plaintiff in this action or that he dismissed his case against the Defendants; (3) testimony about lawsuits filed by Mary Lawver against all her former employers, including the Defendants in this action; and (4) the testimony of previously undisclosed witnesses. Plaintiff's Motion, as discussed below, must be denied.

## MEMORANDUM OF LAW

## ARGUMENT

**I.  Plaintiff's prior sexual harassment lawsuit against her former employer, Ocean Development is admissible evidence.**

During the course of discovery, Westgate learned that in 1997, merely <u>three (3)</u> years before filing this action, Plaintiff and her husband, Marc Walters, filed an action against Ocean Development seeking relief for Title VII violations. Pursuant to this Court's Case Management Order, Westgate alerted Plaintiff of its intent to elicit testimony regarding the Ocean Development Action, including the use of the complaint in that matter.

Plaintiff's Motion does not directly address the specific reasons why Westgate cannot cross-examine Plaintiff about her prior Title VII lawsuit against Ocean Development. Similarly, Plaintiff's Motion fails to cite a single authority for her request to exclude this evidence.[1]

---

[1] The cases cited by Plaintiff are not relevant to the specific facts litigated in this Motion. *Chandle v. Florida*, 449 U.S. 560, 574 (1981) involved a criminal case where one of the parties was challenging the excessive television coverage of the case. In *United States v. Dodds*, 347 F.3d 893, 897 (11th Cir. 2003), the Eleventh Circuit discussed the evidence for price fixing allegations after summary judgment was granted. Lastly, in *U.S. v. Funches*, 135 F.3d 1405 (11th Cir. 1998), the Eleventh Circuit upheld a trial court's exclusion of testimony regarding the defendants' reasons for carrying a gun. The Court stated that the charge against defendant- possession of a weapon by a

3

Case No. 6:01-CV-1390-ORL-19JGG
Defendants' Memorandum in Opposition to
Plaintiff's Motion in Limine

Instead, Plaintiff makes a generic blanket statement that the four items identified in her Motion must be excluded because they are not relevant, they are prejudicial or in the alternative, they constitute impermissible character evidence. Plaintiff's Motion page 7, first sentence. However, Plaintiff's argument is fatally flawed. Plaintiff's prior lawsuit must be admitted because: (a) it is relevant evidence directly addressing damages/or and Defendants' affirmative defenses in this action; (b) it shows motive, intent, or common scheme by the Plaintiff as allowed by Fed.R.Evid. 404(b); and (c) is not prejudicial evidence as defined by Fed.R.Evid. 403.

### A. Plaintiff's prior lawsuit against Ocean Development is relevant because it addresses Plaintiff's damage claim and Defendants' affirmative defenses.

It is well established that only relevant evidence is admissible. *United States v. Bowie,* 232 F.3d 923, 928 (U.S. App. D.C. 2000). The Federal Rules of Evidence define relevant evidence as " … evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it might be without the evidence." Fed. R. Evid. 401. Relevancy is dictated by the issues in the case. Plaintiff's contention that Plaintiff's previous Title VII lawsuit is not relevant to any issues or defenses raised in this action is incorrect.

In this particular case, Plaintiff alleged that she was subjected to a hostile work environment in violation of Title VII and specifically seeks damages for such violation, including damages for emotional distress. Westgate is entitled to offer testimony to apportion Plaintiff's damages—especially if other events may have caused her emotional distress. *EEOC v. Danka Industries, Inc.*, 990 F.Supp.1138, 1141 (E.D.Mo.1997). This can be shown if Plaintiff sought damages for emotional distress in a previous lawsuit- and presumably was compensated

---

convicted felon- was a strict liability crime and that the defendants' intentions were irrelevant to the charge or his defenses.

4

Case No. 6:01-CV-1390-ORL-19JGG
Defendants' Memorandum in Opposition to
Plaintiff's Motion in Limine

for it- and is seeking the same type of damages in this action. *Gastineau v. Fleet Mortgage Corp.*, 137 F.3d 490 (7th Cir. 1998). In the lawsuit filed by Plaintiff against Ocean Development in 1998 she sought compensation for the emotional distress that she suffered due to the alleged sexual harassment. See Exhibit A, page 1 and 15. Contrary to Plaintiff's argument, this evidence is relevant to Plaintiff's emotional distress damage claim, especially the cause of it[2], and must be admitted.

Similarly, the Defendants have raised as one of their affirmative defenses that Plaintiff knew of Westgate's anti-discriminatory policy and purposely failed to avail herself of its protections. Plaintiff filed her first Title VII lawsuit on October 2, 1998. That particular lawsuit was ended as agreed by the parties' stipulation for dismissal on June 17, 1999. Only sixteen (16) months later, Plaintiff started to work for Westgate and allegedly was subjected to sexual harassment after her first month on the job. Plaintiff's Depo. at pp. 47 - 49.[3] Incredibly, Plaintiff did not report the alleged sexual harassment until after she quit her job, in late December 2000, just as she had done in her prior employment. Plaintiff's prior Title VII lawsuit is specifically relevant to this action because it shows that Plaintiff, as a seasoned sexual harassment claimant, was particularly familiar with sexual harassment policies, especially the reporting requirements under such a policy, but purposely failed to report the alleged harassment, as she was required to do if she truly wanted corrective action taken. Because Plaintiff's prior lawsuit is relevant and necessary to establish one of the Defendants' affirmative defenses, it must be admitted.

---

[2] Akin to a pre-existing injury or condition in a personal injury case.
[3] Plaintiff worked at Westgate for a relatively short period of time between October 2000 to the end of December in 2000.

Case No. 6:01-CV-1390-ORL-19JGG
Defendants' Memorandum in Opposition to
Plaintiff's Motion in Limine

> **B.     This evidence is introduced to show motive, opportunity, preparation, knowledge, and common scheme as allowed by Fed.R.Evid. 404(b).**

Plaintiff's argument that this evidence is impermissible character evidence is misguided. Westgate does not seek to elicit this testimony to show that Plaintiff is litigation prone as such use, standing alone, would be prohibited by Fed.R.Evid. 404(a). However, Fed.R.Evid. 404(b) specifically states that evidence of other "crimes, wrongs or acts" is admissible to prove "motive, opportunity, intent, preparation, plan, knowledge…" The courts have routinely held that evidence of prior lawsuits can be used against a plaintiff if a defendant can show an admissible purpose as required by Fed.R.Evid. 404(b).

In *Gastineau v. Fleet Mortgage Corp.*, 137 F.3d 490 (7th Cir. 1998), the plaintiff sued his former employers for violations of Title VII. The plaintiff sought to exclude evidence that he filed at least three (3) lawsuits (unrelated to Title VII) against his former employers because he argued that this evidence was introduced to show his litigiousness. The trial court allowed the evidence of the prior lawsuits because it showed motive, intent, knowledge, common scheme and plan by that particular plaintiff as allowed by Fed.R.Evid. 404(b). The Seventh Circuit Court of Appeal affirmed the trial court's decision to admit the three (3) lawsuits filed against his former employers because the evidence was not offered to prove the fact that plaintiff was litigation prone but to prove issues affecting his credibility, as allowed in Fed.Evid.R.404(b). This action warrants the same result.

Westgate seeks to elicit this evidence to attack Plaintiff's credibility and to show motive, and common scheme. Indeed, a comparison of Plaintiff's allegations, her conduct in the Ocean Development lawsuit and this action show a common scheme. In the Ocean Development suit, filed merely three (3) years before Plaintiff started to work at Westgate in 2000, Plaintiff alleged that the General Manager, Mike Manning, subjected her to unwelcome sexual comments and

6

Case No. 6:01-CV-1390-ORL-19JGG
Defendants' Memorandum in Opposition to
Plaintiff's Motion in Limine

touched her breast and buttocks, among other things. Exhibit A, ¶¶ 11-12. Plaintiff strongly objected to the harassment but, just as she did here, she did not tell her husband or anyone of the harassment. ¶ 13.

After a few incidents of harassment, Plaintiff- just like here-took time off from work to escape the alleged harassment. However, just like in this case, she told her husband that she was "burned out." ¶ 14. Plaintiff returned to work but Mr. Manning continued to accost her. Indeed, and incredibly, just like in this action, he called her into his office and tried to sexually attack her. ¶ 16. Although, just like in this case, no one could substantiate the attack or Plaintiff's reaction, Plaintiff kicked him in the groin and fled the office. *Id.* Plaintiff did not return to work for several weeks. She came back for a short time but between September and December of 1995 she missed a lot of work due to stress. ¶¶ 17-18. Finally on December 13, 1995, she quit. ¶ 21. In the beginning of January 1996 only after she quit, Plaintiff, for the first time revealed the alleged harassment and told Mr. Denny Brisson, the Vice President for Ocean Development, that she was the victim of sexual harassment. ¶ 22. Mr. Brisson asked whether she would be amenable to return to work if Mr. Manning was fired. She replied that she would but she never heard back from Mr. Brisson. ¶¶ 23-24. Sometime in March 1996, Plaintiff was told that Mr. Manning was fired and she returned to work. ¶ 25-27. Mr. Brisson was given Mr. Manning's position and just as Mr. Manning had done in the past, Mr. Brisson started to sexually harass Plaintiff. ¶¶ 28-30. After a confrontation with Mr. Brisson, Plaintiff left the building crying and quit her job. ¶ 32. That very same day, she told her husband about the sexual harassment. ¶ 33. Mr. Walters confronted Mr. Brisson about the harassment and subsequently was fired. ¶¶ 34-36.

Case No. 6:01-CV-1390-ORL-19JGG
Defendants' Memorandum in Opposition to
Plaintiff's Motion in Limine

Three years later is déjà vu, so to speak, for Plaintiff.[4] According to Plaintiff, a month after she started to work as a sales representative at the Canyons, in the middle of November 2000, McGriff started to sexually harass her with unwelcome sexual comments. Plaintiff's Depo. at pp. 47 - 49 . In November 2000, McGriff supposedly slid his hand around her and touched her breast while they were in the sales lounge. Plaintiff's Depo. at pp. 51-53. On December 2, 2000, Plaintiff left for Florida after telling her husband that she was going to Florida just to get away from work. Plaintiff's Depo. at p. 79. Plaintiff had yet to tell her husband about any of the alleged harassment. *Id.* at p. 77. Plaintiff returned to Utah and to her job about December 18, 2000. Plaintiff's Depo. at p. 83. In late December 2000, McGriff called Plaintiff to his office to discuss a scheduling issue. Plaintiff's Depo. at pp. 55. Plaintiff was standing next to McGriff, who was sitting on his desk, looking at the sales report. *Id.* at p. 67. McGriff turned to get something on the other side of his desk when the lights went out. *Id.* at p. 67. McGriff then grabbed her buttocks. *Id.* at pp. 56. She slapped him and then ran out of McGriff's office. *Id.* at p. 69. She was crying and upset. *Id.* at p. 70. She returned to work the day following; there were no further incidents with McGriff. *Id.* at p. 77. This was her last day of work at the Canyons. *Id.* at p. 84.

Plaintiff again told her husband that she needed time off from timeshare sales and that she wanted to go to Florida to take a break. Plaintiff's Depo. at p. 79. Consequently, Plaintiff took time off from work at the Canyons prior to her departure to Florida. *Id.* at p. 84. Plaintiff left Utah between January 3 and 5, 2001. Plaintiff's Depo. at p. 84. The night prior to her departure to Florida for the second time, Plaintiff told her husband for <u>the first time</u> that she had, supposedly, been sexually harassed by McGriff. *Id*. at p. 89. Plaintiff claims she belatedly

---

[4] Defendants' recitation of Plaintiff's deposition testimony does not constitute an admission that these events occurred. On the contrary, Defendants deny that Mr. McGriff ever engaged in any sexual harassment.

8

Case No. 6:01-CV-1390-ORL-19JGG
Defendants' Memorandum in Opposition to
Plaintiff's Motion in Limine

disclosed this information to her husband in response to his questioning why Plaintiff was returning to Florida, where Plaintiff and her husband owned a home. *Id.* at p. 89.

In January 2001, only after she had left her job, and while in Florida, Plaintiff contacted Sandra Jones, CFI's Director of Human Resources, and, for the first time, told her employer about McGriff's alleged sexual harassment. *Id.* at p. 97. They met a couple of days later in Daytona Beach, Florida, at a restaurant[5], to discuss Plaintiff's allegations. *Id.* at p. 98. Plaintiff's discussion with Ms. Jones was the first and only time that Plaintiff told anyone at CFI of McGriff's alleged conduct. *Id.* at pp. 72. During this meeting, Ms. Jones asked Plaintiff whether she wanted to continue to work at Westgate. *Id.* at p. 93. Plaintiff replied that she did not, as long as McGriff remained employed there. *Id.* at pp. 93. Plaintiff alleges that Ms. Jones failed to call her after that meeting. *Id.* After several weeks, Plaintiff called Ms. Jones and learned that Westgate's investigation was inconclusive and that Mr. McGriff had not been fired.

The uncanny similarities between the two suits are undisputed. In the two lawsuits, Plaintiff failed to tell anyone, including her husband of the alleged harassment. In both lawsuits, Plaintiff took time off due to the alleged harassment but told her husband that she needed to take time off due to job stress. In both lawsuits, Plaintiff voluntarily quit and only after she quit did she alert her husband and the company representative of the alleged sexual harassment. Likewise, in both lawsuits Plaintiff demanded that the alleged harasser be fired before she could return to work. Incredibly, minor details such as the timing of her resignation and her reporting are identical in both suits. Plaintiff resigned from both jobs in late December and reported the harassment to a company representative sometime in January. Even the meeting with the

---

[5] After Plaintiff quit working for Ocean Development on May 10, 1996, she met with a corporate representative at a restaurant to discuss her sexual harassment allegations. Exhibit A, ¶ 36. Defendants are unsure if it was the same restaurant in which she met Ms. Sandra Jones.

9

Case No. 6:01-CV-1390-ORL-19JGG
Defendants' Memorandum in Opposition to
Plaintiff's Motion in Limine

company representatives for the respective companies took place in a similar venue, at a restaurant. Moreover, the two key confrontations which alleged caused Plaintiff's resignation took place in an office after her supervisors requested the Plaintiff's presence, allegedly under false pretenses. Lastly, in the two lawsuits Plaintiff left the alleged harasser's office running and crying. All the alleged events occurred totally in private, so there were no witnesses to rebut Plaintiff's claims.[6]

These similarities are not coincidental. They show that Plaintiff had a motive, plan and a common scheme which directly challenges her credibility in this action in the same manner as the plaintiff in *Gastineau*. Plaintiff was repeating a tried and true, so to speak, successful pattern of action that had netted her great financial gains- for the same conduct- less that sixteen months before she started working for Westgate. The evidence also permits the jury to interpret Plaintiff's story in another way: Plaintiff's reaction to stress by fabricating a tale of sexual harassment to explain her inability to do her job. Clearly, this evidence is admissible as stated in *Gastineau* to show Plaintiff's motive, knowledge, intent, plan and common scheme.

### C.  This evidence is not prejudicial.

Plaintiff's argument that this evidence should be excluded as prejudicial under Fed.R.Evid. 403 is without merit. This evidence can be used to impeach Plaintiff's credibility, which is never a collateral issue. Fed.R.Evid. 607. The jury has the opportunity to see and hear Plaintiff's testimony and to assess her credibility. The jury will not be confused simply because Defendants will raised the issue that Plaintiff filed a Title VII lawsuit against her previous employers. Any prejudice can be cured with a jury instruction stating that this particular

---

[6] Plaintiff also failed to make any contemporaneous record of the harassment, despite knowing the power of such evidence because of her experience in the prior lawsuit. This absence can be explained- as the jury is entitled to consider- by Plaintiff's fear that such fabricated evidence could be considered perjurious.

Case No. 6:01-CV-1390-ORL-19JGG
Defendants' Memorandum in Opposition to
Plaintiff's Motion in Limine

evidence cannot be used to show that Plaintiff is litigation prone but to show that she had a motive, intent, knowledge, a plan and a common scheme, and to preclude an alternate explanation for Plaintiff's claims of harassment. That is especially pertinent because in both cases Plaintiff's belatedly reported harassment that occurred only while Plaintiff was totally alone with her alleged harasser, so that there would be no one to refute Plaintiff's veracity. Because the probative value of this particular evidence, as it relates to Plaintiff's emotional distress claim, Defendants' affirmative defenses and Plaintiff's credibility, <u>substantially</u> outweighs any danger of unfair prejudice to the Plaintiff, Plaintiff's prior Title VII suit must be admitted into evidence.

II.   **Mary Lawver's allegations of sexual harassment against Mr. Joseph McGriff are irrelevant to the issues raised by Plaintiff in this action.**

Defendants filed their own Motion in Limine seeking to exclude Mary Lawver's testimony at trial in this action. As discussed in Defendants' Motion, Ms. Lawver has <u>no</u> personal knowledge about Plaintiff's allegations, a predicate to her testimony under Fed.R.Evid. 602. Ms. Lawver's only source of information concerning the alleged sexual harassment of Plaintiff by Joe McGriff came from a conversation with another person, Ms. Denise Paxton. Such conversation constitutes a classic example of hearsay excluded by Fed.R.Evid. 802. Moreover, Ms. Lawver's testimony in this case is nothing more than Plaintiff's attempt to circumvent her burden of proof by introducing "me too" evidence and to create a mini-trial of Ms. Lawver's unproven claims within her trial. This approach has been rejected by the Eleventh Circuit because the minimal probative value of this type of testimony is substantially outweighed by the danger of unfair prejudice and confusion to the jury. *McWhorter v. City of Birmingham,* 906 F.2d 674 (11th Cir. 1990); Fed.R.Evid. 403. Furthermore, this testimony is solely provided to prove impermissible character evidence that McGriff sexually harassed Lawver and Walters.

11

Case No. 6:01-CV-1390-ORL-19JGG
Defendants' Memorandum in Opposition to
Plaintiff's Motion in Limine

Fed.R.Evid. 404(a). Nor does Ms. Lawver's testimony provide a window, or Plaintiff might suggest, into the work environment Plaintiff's claim centers on four (4) completely distinct events; the general work environment is simply not implicated. And, the four (4) incidents of which Plaintiff complains are so dissimilar to what Ms. Lawver alleged as to have no probative value.

However, should this Court be inclined to allow this testimony, then this Court must deny Plaintiff's Motion. Plaintiff seeks to exclude any testimony that: (a) Mary Lawver sued Westgate for the alleged sexual harassment of Mr. McGriff or that (b) she filed a previous Title VII lawsuit against her former employer in 1998. As previously discussed, other than a generic blanket statement seeking exclusion of this evidence, Plaintiff fails to provide this Court with any authority stating that this particular evidence must be excluded. On the contrary, courts have routinely allowed this type of evidence to show bias.

While the Rules of Evidence do not specifically identify bias as mode of impeachment, the Supreme Court in *U.S. v. Abel*, 105 S.Ct. 465, 468 (1984) held that the "right to cross-examine includes the opportunity to show that a witness is biased or the testimony is exaggerated or unbelievable." Courts must allow party-wide latitude to cross-examination of all matters that indicate that a witness may have a bias, prejudice or is motivated to testify in a certain way. *Brady v. Chemical Construction*, 740 F.2d 195 (2nd Cir. 1984)( A civil case where a letter was found to be admissible to prove bias of a witness); *U.S. v. Mansaw*, 714 F.2d 785 (8th Cir. 1983); *Yoho v. Thompson*, 548 S.E.2nd 584 (S.C. 2001). Moreover, courts have routinely held that prior lawsuits filed by a witness against a party to the action are admissible to show bias and hostility against that particular party. *U.S. v. Hoppe*, 645 F.2d 630, 632 (8th Cir. 1981); *Coleman Motor Co. v. Chrysler Corp.*, 525 F.2d 1338, 1350-1351 (3rd Cir. 1975) (Defense could properly ask

Case No. 6:01-CV-1390-ORL-19JGG
Defendants' Memorandum in Opposition to
Plaintiff's Motion in Limine

witness about suit brought by witness against defendant for antitrust violations.) Therefore, if the Court allows Ms. Lawver's testimony of her alleged sexual harassment by Mr. McGriff, the Defendants must be allowed an opportunity to demonstrate to the jury Ms. Lawver's bias by introducing testimony of her previous Title VII lawsuit against Westgate and her former employers. This will be the only way that Defendants may attack or impeach Ms. Lawver's credibility as allowed by Fed.R.Evid. 607. Otherwise, without this information Defendants' cross-examination of Ms. Lawver would be meaningless. Defendants would be essentially deprived of their right to cross-examine this witness, especially since the Defendants would not be allow to put on evidence to challenge her sexual harassment allegations[7] as this trial is about Plaintiff's - not Ms. Lawver's - sexual harassment allegations.

### III. Marc Walters is precluded from testifying about his retaliation claim against Defendants.

Defendants have also requested that Mr. Walters' testimony about his lawsuit against Westgate be excluded. As discussed in Defendants' Motion, Mr. Walters did not witness any of the alleged sexual harassment of his wife and has no personal knowledge to testify as required by Fed.R.Evid. 602. Any knowledge regarding those incidents was as a result of his conversations with his wife. However, such conversation would be excluded as impermissible hearsay. Mr. Walters' testimony is irrelevant and prejudicial, and, as with Lawver, endeavors to persuade the jury that Joe McGriff is generally a bad guy who *must* have harassed his wife.

Plaintiff has represented that Mr. Walters will only testify to damages, specifically how the sexual harassment has affected his wife and the family.[8] But even this limited testimony has

---

[7] This is why Ms. Lawver's testimony should be excluded in the first place.
[8] Plaintiff's performance is not at issue. Mr. Walters cannot testify to this issue, other than to give his opinion. Similarly, Mr. Walters has never testified that he witnessed a single incident of harassment against his wife or other representatives at the job site. To the extent that he now seeks to do so, Defendants move that such testimony be stricken because it fails Fed.Rule.Civ.P.26.

Case No. 6:01-CV-1390-ORL-19JGG
Defendants' Memorandum in Opposition to
Plaintiff's Motion in Limine

no probative value. Plaintiff withheld the facts from her husband, telling him only after she had pleaded burnout and made other excuses, none of which were, according to Plaintiff now, true. Plaintiff's husband cannot, as a matter of law, relate McGriff's alleged harassment to Plaintiff's "alleged" emotional distress to it because Mr. Walters did not know the allegedly true reason for Plaintiff's behavior. When Plaintiff- just as she did in her first sexual harassment case- lied to her husband about the reasons for taking time off, she disqualified him as a witness. But if he does testify, why should Defendants be precluded from providing to the jury the entire story? There is simply no reason.

### IV. All witnesses were timely disclosed.

Defendants concede that they did not identify Mike Manning, Denny Brisson or Steve Kosmos in their Rule 26 disclosures or in their response to Plaintiff's Interrogatories. However, the Ocean Development suit was discussed during Plaintiff's deposition and Plaintiff, at that point, certainly knew that the lawsuit would be evidence and the individuals associated with it would be witnesses at this trial. Consequently, Plaintiff's Motion to exclude these witnesses must be denied.

### CONCLUSION

For the reasons stated above, Defendants request respectfully this Court to deny Plaintiff's Motion in Limine.

Case No. 6:01-CV-1390-ORL-19JGG
Defendants' Memorandum in Opposition to
Plaintiff's Motion in Limine

GREENSPOON MARDER, P.A.
Attorneys for Defendants
201 East Pine Street, Suite 500
Orlando, FL 32801
(407) 425-6559 (Telephone)
(407) 422-6583 (Facsimile)


BY: s/Myrna L. Maysonet
    RICHARD W. EPSTEIN
    Florida Bar No. 229091
    MYRNA L. MAYSONET
    Florida Bar No. 0429650


## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on February 27, 2006, the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following: Frederick C. Morello, Esq. and Deborah M. Hallisky, Esq., 111 N. Frederick Avenue, 2nd Floor, Daytona Beach, Florida 32114.


BY: s/Myrna L. Maysonet
    MYRNA L. MAYSONET

G:\MLM\0108\1110\pldgs\Memo in Opp. to P's Motion in Limine 2-2006.doc